In the
United States Court of Appeals
For the Seventh Circuit

No. 00-1875

BETTINA S. SHARP,

Plaintiff-Appellant,

v.

UNITED AIRLINES, INCORPORATED,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 0478--Elaine E. Bucklo, Judge.

Argued October 30, 2000--Decided January 2, 2001

Before RIPPLE, DIANE P. WOOD and EVANS, Circuit
Judges.

RIPPLE, Circuit Judge.  Bettina Sharp brought
this cause of action against her former employer,
United Airlines, Inc. ("United"), in which she
alleged that United discriminated against her
based on her pregnancy. The district court
granted summary judgment for United. For the
reasons set forth in the following opinion, we
affirm the judgment of the district court.

I
BACKGROUND
A.  Facts

Ms. Sharp worked as a flight attendant for
United from July 1990 until October 1993, when
she, along with other female attendants, were
terminated for exceeding United's weight
restrictions. Those terminated brought a class
action lawsuit in the Northern District of
California, Frank v. United Airlines, Inc.
("Frank litigation"), No. C-92-0692, in which
they alleged that United's weight policy
discriminated against them on the basis of their
sex, age, and disability.

In February 1995, United offered reinstatement
to fourteen former flight attendants, including
Ms. Sharp, who were class members in the Frank

litigation. In a letter to the class members' lawyer, United offered to reinstate the women with no loss of seniority. United further stated that it would treat the litigants' time off the job as a leave of absence. Finally, the offer did not require the women to waive any potential claims against United arising out of the initial termination. United stated that the offer would remain open for thirty days, after which time it would be deemed rejected. All fourteen former attendants received identical offers.

United was able to contact ten of the fourteen flight attendants immediately; of the ten individuals that were contacted, seven accepted the offer within the specified time period. Two indicated they would like to accept but could not due to individual circumstances (one had started school and another was living in Uruguay). Ms. Sharp, through the attorney representing the class, advised United that she "would like to accept but [was] pregnant and [could not] go through requalifying until after the delivery and recuperation." R.40, para. 43 (internal quotation marks and citations omitted). Thus, she did not accept United's offer.

The remaining four women ultimately were located and contacted. United permitted those women to accept its offer after the original deadline had expired, as long as they accepted the offer within thirty days after they received notice of it. All four accepted within the thirty-day window.

In April 1996, nine months after the birth of her child, Ms. Sharp requested that United renew its offer for reinstatement with full seniority. Through the lawyer representing the class, she informed United that she was recovered fully and she wanted to return to work. The next month, Ms. Sharp wrote directly to United; she explained that the original offer had come at the "wrong time" for her to accept because she had been in the last two trimesters of a high-risk pregnancy. R.40, Ex.D at Ex.21. She also advised United that her doctor had suggested that she not return to work for one year following the delivery to permit her time to recuperate.

United decided in August 1996 not to renew its original reinstatement offer. United's counsel indicated that two other women had turned down its offer and that Ms. Sharp's reason for declining did not warrant an exception, especially given that Ms. Sharp could have accepted the offer and promptly taken maternity leave. At this time, Ms. Sharp realized that United would not renew the original offer of reinstatement.

Ms. Sharp and her husband, a United pilot, then directly lobbied various United officials to renew the original reinstatement offer. In February 1998, in response to these inquires, United sent, through the attorney representing the class, a revised reinstatement offer to Ms. Sharp. According to the terms of this offer, Ms. Sharp would retain her seniority for the time periods she worked between 1990 and 1993. However, she would be required to sign a general release and waive her participation in any litigation against United. The offer remained open for fourteen days.

On March 3, 1998, Ms. Sharp's attorney advised United that Ms. Sharp would not accept the second reinstatement offer because the terms were less favorable than those contained in the first reinstatement offer. Then, Ms. Sharp filed a charge of discrimination with the Equal Employment Opportunity Commission. The charge alleged that United had discriminated against Ms. Sharp on the basis of her pregnancy because "other non-pregnant flight attendants were reinstated with seniority and were not requested to sign any waivers." R.26, Ex.3. The EEOC was unable to conclude that United's actions violated Title VII and, therefore, dismissed the charge in November 1998.

B.   District Court's Disposition

Ms. Sharp filed her complaint in district court in January 1999. In her complaint, Ms. Sharp alleged that United had discriminated against her on the basis of her sex and her pregnancy when it failed to renew its initial offer of reinstatement to her after the birth of her child. United denied the material allegations of the complaint and raised three affirmative defenses: 1) the complaint failed to state a claim for which relief could be granted; 2) Ms. Sharp's claims were untimely in that she failed to bring her charge of discrimination within the 300 day statute of limitations; and 3) Ms. Sharp failed to mitigate her damages.

Shortly thereafter, United moved for summary judgment on several grounds. United maintained that Ms. Sharp's claim was based solely on the 1998 offer of reinstatement, which was a settlement offer and therefore inadmissible under Federal Rule of Evidence 408. United also contended that Ms. Sharp could not make out a prima facie case of pregnancy discrimination because she was not pregnant at or near the time that the discriminatory conduct allegedly took place. Furthermore, United argued, Ms. Sharp's claims were untimely: "[Ms.] Sharp," it stated,

"did not file a discrimination charge in 1996 when she understood that United was not renewing its earlier offer. The only act that occurred within 300 days of her charge was United's 1998 offer giving her a second chance to return to work in exchange for a waiver of current and potential claims." R.24 at 8-9 (internal citations omitted). Finally, United maintained that Ms. Sharp could not come forward with evidence that non-pregnant, former United employees had been treated more favorably than she had been treated.

The district court granted United's motion for summary judgment. It held that Ms. Sharp had failed to establish a prima facie case of pregnancy discrimination. Specifically, the district court determined that Ms. Sharp had not shown the requisite connection between her pregnancy and United's failure to reinstate her pursuant to the terms of its original offer. Moreover, the district court concluded, Ms. Sharp had not set forth sufficient evidence to show that her pregnancy, rather than her decision not to accept United's initial reinstatement offer, was the reason United rejected her later attempt to return to work. The district court did not address whether Ms. Sharp had filed her charge with the EEOC within the applicable statute of limitations. Ms. Sharp now appeals the district court's judgment in favor of United.

II
DISCUSSION

We review de novo the district court's grant of summary judgment. See Silk v. City of Chicago, 194 F.3d 788, 798 (7th Cir. 1999). "Summary judgment is proper if the record as a whole shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Moore v. J.B. Hunt, Inc., 221 F.3d 944, 950 (7th Cir. 2000) (internal quotation marks and citations omitted). In conducting our review, however, we are not bound to the issues determined by the district court; we may affirm a grant of summary judgment "on a ground other than that relied upon by the district court . . . so long as the alternative basis finds adequate support in the record." Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996).

On appeal, Ms. Sharp maintains that the district court erred in granting summary judgment for United because she established a prima facie case of pregnancy discrimination. She further asserts that she came forward with evidence that United's proffered justification for treating her differently, that she rejected United's first

offer of reinstatement, was not worthy of credence. Finally, Ms. Sharp takes issue with the district court's determination that she would be entitled to relief only if she had established that the underlying discharge was discriminatory. It is unnecessary to address these issues, however, because we conclude that Ms. Sharp's action is time-barred.

Ms. Sharp makes clear in her complaint, in her opposition to United's motion for summary judgment, and in her brief to this court that United's alleged discriminatory act was its failure to renew its original offer of reinstatement to her after she had indicated interest in returning to work. See R.1 at 3 ("Defendant discriminated against plaintiff treating her differently than other non-pregnant employees who were reinstated without losing their seniority or being required to sign litigation waivers."); R.40 at 1 ("Plaintiff was discriminated against because United refused to reinstate her on the same terms it did regarding similarly situated individuals who were not pregnant."); Appellant's Br. at 7 ("This instant action is a claim of pregnancy discrimination arising out of defendant United Airline's (United) decision to reinstate a class of flight attendants who had been discharged under a weight control program. Although Ms. Sharp . . . was a member of that class, United refused to reinstate her because she was pregnant."). According to her deposition testimony, Ms. Sharp became aware of the fact that United was not going to renew its original offer of reinstatement in 1996. See R.26, Ex.2 at 59. She also was aware in 1996 that United had renewed the original offer to other flight attendants, whom United had been unable to contact during the pendency of the original offer period; Ms. Sharp believed that United's refusal to reinstate her on the same terms as those offers was "unjust" and "discriminatory." R.26, Ex.2 at 33-35.

According to statute, a plaintiff in a deferral state such as Illinois must file a charge of discrimination with the EEOC or equivalent state agency within 300 days after the "alleged unlawful employment practice." 42 U.S.C. sec. 2000e-5(e)(1). The 300-day limit, we have stated, begins to run when the defendant has taken the action that injures the plaintiff and when the plaintiff knows she has been injured, see Cada v. Baxter Healthcare Corp., 920 F.2d 446, 449-50 (7th Cir. 1990), "not when [she] determines that the injury was unlawful," Thelen v. Marc's Big Boy Corp., 64 F.3d 264, 267 (7th Cir. 1995).

Ms. Sharp has identified the "alleged unlawful employment practice" as United's refusal to renew

the original settlement offer. Furthermore, according to Ms. Sharp's own testimony, United communicated this refusal in August 1996, and she became aware of it at that time. Nevertheless, Ms. Sharp did not file her charge of discrimination until almost two years later on June 18, 1998. Consequently, Ms. Sharp's charge was untimely, and that untimeliness bars the present action. See Conley v. Village of Bedford Park, 215 F.3d 703, 710 (7th Cir. 2000).

In response to the timeliness argument in the district court, Ms. Sharp argued that either equitable estoppel, equitable tolling, or the continuing violation theory saved her claim. Ms. Sharp failed to reiterate these arguments on appeal and, as a practical matter, those arguments are waived. See Hardy v. City Optical Inc., 39 F.3d 765, 771 (7th Cir. 1994) (stating that, when an appellant does not respond in his reply brief to an alternative ground for upholding the ruling, the appellant "waives, as a practical matter anyway, any objections not obvious to the court to specific points urged by the appellee").

However, even if Ms. Sharp had pressed her arguments on appeal, we do not believe that equitable estoppel, equitable tolling, or the continuing violation theory render Ms. Sharp's action timely. The doctrine of equitable estoppel, also known as fraudulent concealment, "is available if the defendant takes active steps to prevent the plaintiff from suing in time." Jackson v. Rockford Housing Auth., 213 F.3d 389, 394 (7th Cir. 2000) (internal quotation marks and citations omitted). In her submissions to the district court, Ms. Sharp pointed only to United's willingness to respond to her requests for reconsideration as the action that caused her to delay in filing a charge of discrimination. We previously have held, however, that when an employer provides an avenue (or avenues) for review of adverse employment actions, without more, the doctrine of equitable estoppel is not applicable. See Lever v. Northwestern Univ., 979 F.2d 552, 555-56 (7th Cir. 1992) (stating that pursuing a grievance via an internal grievance proceeding does not postpone accrual of a claim under Title VII).

Equitable tolling does little more to save Ms. Sharp's claims. "A plaintiff may toll the statute of limitations if, despite all due diligence, he is unable to obtain enough information to conclude that he may have a discrimination claim." Thelen, 64 F.3d at 268. Yet, by her own admission, Ms. Sharp was aware in August 1996 that United did not intend to renew its original offer of reinstatement to her and also that

United had renewed the same offer to other employees. Consequently, Ms. Sharp had adequate information in August 1996 to file a charge of discrimination.

Finally, Ms. Sharp has not come forward with evidence of a "continuing violation" that might extend the statute of limitations. Before the district court, Ms. Sharp argued that United's subsequent refusals to reconsider its decision of August 1996 (not to renew the original offer), culminating in the less-generous 1998 offer, constituted a continuing course of pregnancy discrimination. However, "[a]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination." Lever, 979 F.2d at 556. Consequently, United's subsequent refusal to reconsider the August 1996 decision does not constitute a separate act of discrimination and cannot bring Ms. Sharp's claims within the 300-day statute of limitations.

Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED