**Susannah Q. CAREY, Plaintiff–Appellant,**

v.

**MILWAUKEE BOARD OF SCHOOL DIRECTORS and Milwaukee Teachers Education Association, Defendants–Appellees.**

No. 02–4144.

United States Court of Appeals, Seventh Circuit.

Submitted Oct. 31, 2003.*

Decided Nov. 3, 2003.

Susannah Q. Carey, Milwaukee, WI, pro se.

Miriam Horwitz, Milwaukee City Attorney's Office, B. Michele Sumara, Perry, Shapiro, Quindel, Saks, Charlton & Lerner, Milwaukee, WI, for Defendants–Appellees.

Before POSNER, ROVNER, and EVANS, Circuit Judges.

**ORDER**

Susannah Carey is a former Milwaukee public school teacher. She sued the Milwaukee Board of School Directors and her former union, the Milwaukee Teachers Ed-

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

ucation Association, alleging that they discriminated against her because of a physical disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* The district court entered summary judgment for the defendants because it found that Carey's claim was time-barred by the statute of limitations. We affirm.

Carey was first employed by the Board as a teacher in 1993. In August 1998 she submitted a resignation letter to the Education Association stating that she wished to move to North Carolina to be closer to her family. The Association forwarded her resignation letter to the Board. The next month, however, she changed her mind about resigning and requested that the Board grant her a one-year medical leave because of a spinal cord injury she had suffered the previous year. The Board did not respond to the leave request and instead sent Carey a form letter accepting her resignation. She admits receiving this letter in mid-October.

Carey reapplied for a teaching position in December 1998 but the Board refused to hire her. In April 1999 Carey asked her financial advisor to write to the Board and request her reinstatement. The Board did not respond, so Carey wrote a letter herself in June 1999 asking for her job back. The Board finally sent Carey a letter on July 12, 1999 informing her that she was not on leave and reiterating that it had accepted her resignation effective August 1998.

Nearly ten months after receiving this letter, Carey went to the EEOC claiming that the Board and the Association had discriminated against her because of her spinal cord injury. Carey submitted two intake questionnaires to the EEOC on May 5, 2000, and filed a charge three days later. The EEOC informed her that her charge was untimely and that it would not pursue the matter. In September 2000

Carey filed this lawsuit. The district court found that Carey's claim accrued in either October 1998—when she received the Board's letter accepting her resignation—or at the latest in December 1998—when the Board refused to rehire her.

On appeal, Carey argues that the court erred in specifying either October or December as the appropriate accrual date for her claim. She maintains, without elaboration, that her claim actually accrued in July 1999, when the Board responded to her requests to be reinstated.

In order for a claim under the ADA to be timely, it must be filed with the EEOC within 180 days of the last alleged act of unlawful employment practice; this period is extended to 300 days if the complainant initiates proceedings first with the appropriate state or local agency. *See* 42 U.S.C. § 2000e–5(e)(1); 42 U.S.C. § 12117 (Title VII's charge filing requirements apply to ADA). When Carey filed her charge with the EEOC, she checked a box on the form stating that she also wanted it filed with the Wisconsin Equal Rights Division. Apparently because of this, the parties and the district court agree that Carey is entitled to the 300–day period, and for purposes of this appeal we will assume as much.

This extended period, however, does little to help Carey. A plaintiff's employment discrimination action accrues when she discovers that she has been injured. *Bishop v. Gainer,* 272 F.3d 1009, 1014 (7th Cir.2001). Carey had to know in October 1998 that her leave request had not been granted because at that time she admits that she received the letter from the Board accepting her resignation. Indeed, Carey had to know that she was no longer employed by the Board because in December—just two months later—she reapplied for a position. Even if we assume that she did not discover her injury (the loss of her

job) until the later date of December 1998, her filing with the EEOC in May 2000 was untimely because it came well over 300 days later.

Rather than disputing the October or December 1998 dates specified by the district court, Carey presses the peculiar argument that her claim did not accrue until July 12, 1999, when the Board sent her its letter restating its position that it had accepted her resignation. She seems to argue that the Board's letter was a new discriminatory act that alerted her to a new injury, and can therefore be used as the relevant date for the accrual of her claim. She claims the letter was the first notice she ever received informing her that her request (from September 1998) to be placed on medical leave had been denied.

We are not persuaded. The Board's letter did not reflect any new action; it merely reiterated the Board's position that it had accepted Carey's resignation nine months earlier. The letter summarized the correspondence exchanged by Carey and the Board in 1998 and 1999, and then said "[i]t is evident by the aforementioned documentation that you have received ample notice regarding your employment status ... you resigned August 24, 1998." If the Board took any discriminatory action in October or December 1998, all it did in its July 1999 letter was refuse to undo that action. We have held that such a refusal does not constitute a new act of discrimination. *Sharp v. United Airlines*, 236 F.3d 368, 373 (7th Cir.2001) ("an employer's refusal to undo a discriminatory decision is not a fresh act of discrimination") (internal quotation omitted).

Finally, Carey argues that her charge should be considered filed when she submitted her intake questionnaires to the EEOC rather than when she filed her formal charge. This court has held that an intake questionnaire may qualify as a charge to satisfy the statute of limitations, *see Downes v. Volkswagen*, 41 F.3d 1132, 1137–39 (7th Cir.1994); *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534, 543–44 (7th Cir.1988) (both ADEA cases), if it provides notice to the EEOC "of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the [Act]'s machinery," *Schroeder v. Copley Newspaper*, 879 F.2d 266, 269 (7th Cir.1989) (ADEA case) (internal quotation omitted). But we need not decide whether Carey's questionnaires provided adequate notice to the EEOC because she did not file them until well after the statute of limitations expired.

AFFIRMED.