# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2210

THOMAS BRADEMAS, et al.,

*Plaintiffs-Appellants,*

v.

INDIANA HOUSING FINANCE AUTHORITY,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP 00-1974-C-M/L—**Larry J. McKinney**, *Chief Judge.*

———————

ARGUED DECEMBER 3, 2003—DECIDED JANUARY 12, 2004

———————

Before FLAUM, *Chief Judge,* and POSNER and WILLIAMS,
*Circuit Judges.*

FLAUM, *Chief Judge.* Plaintiffs Thomas Brademas
and four partnerships of which he is the general partner,
Pin Oak Manor Community Partnership; Western Manor
Community Partnership; Corby Homes Community Part-
nership and Huntington Roads Apartments Partnership;
and four limited liability companies of which he is the
managing member, West Plains Apartments, L.L.C.;
Crossroads Apartments, L.L.C.; Johnson Street Apart-

ments, L.L.C.; Hillcrest Apartments, L.L.C., ("Brademas entities") filed a § 1983 action against the Indiana Housing Finance Authority ("IHFA") alleging that IHFA had wrongfully denied them federal tax credits under the Low- Income Housing Credit Program. The district court entered summary judgment in favor of the defendant on the ground that the Brademas entities' suit was barred by the statute of limitations. Plaintiffs now appeal.

## I.  Background

Thomas Brademas is the general partner of the Madison Partnership ("Madison"). Madison owns the Madison Apartments, a semi-independent residential institution for patients of Madison Center, a mental health care facility in South Bend, Indiana. In 1987, Madison applied to IHFA for an allocation of federal Low-Income Housing Tax Credits for the Madison Apartments.

Pursuant to 26 U.S.C. § 42 of the Internal Revenue Code, IHFA awards Indiana's allocation of federal income tax credits to qualified private developers of low-income housing. Under § 42, IHFA is required to rank all applicants for tax credits according to the criteria included in IHFA's qualified allocation plan ("QAP"). In addition, IHFA must monitor compliance with § 42 by the recipients of tax credits and notify the IRS of noncompliance. The QAP states that IHFA may withhold or reduce an applicant's tax credits if that applicant has failed to comply with IHFA's monitoring procedures or with the requirements of § 42.

IHFA awarded Madison tax credits for the Madison Apartments in 1987. Brademas then entered into a Memorandum of Understanding with the Madison Center and the Indiana State Housing Board ("ISHB") which provided that the ISHB would be responsible for determining the eligibility of Madison Center's patients for Section 8 housing

assistance. The Memorandum of Understanding does not discuss the maintenance of records for purposes of compliance with § 42. The ISHB's duties under the Memorandum of Understanding were later assigned to the Housing Assistance Office of Indiana.

On December 11, 1996, IHFA informed Brademas by letter that it planned to conduct a routine inspection and audit of Madison Apartments to ensure its continuing compliance with the requirements of the Low-Income Housing Tax Credit program pursuant to § 42. The audit required Brademas to provide IHFA with particular documents regarding the income of tenants who had lived in the Madison Apartments in 1995. The letter stated that Madison had ten days to respond to the request, but that IHFA would provide a "cure" period beyond those ten days if Madison filed insufficient documentation. Brademas contends that Madison did not have access to the necessary documents due to its arrangement with the ISHB and the Housing Assistance Office.

On December 27, 1996, IHFA informed Brademas that the tenant files were not in compliance with § 42. IHFA specified which documents were deficient or nonconforming. IHFA allowed Brademas until January 10, 1997 to address the inadequacies and scheduled a final audit review for February 13, 1997. Further, IHFA told Brademas that if Madison submitted an acceptable workout plan to IHFA, it would extend the cure period by an additional ninety days. However, after the expiration of that cure period, IHFA would have to issue a report to the IRS regarding Madison's compliance with the requirements § 42.

In January 1997, shortly after IHFA notified Brademas of the inadequacy of Madison Apartments' tenant files, Brademas secured approval from the Indiana Development Finance Authority for an allocation of tax-exempt bonds,

available pursuant to 26 U.S.C. § 103(a), for the acquisition and rehabilitation of three planned low-income housing developments in Indiana. Those developments, called Corby Homes Community Housing Development, Western Manor Housing Development, and Pin Oak Manor Housing Development, were to be created by the Corby Homes Community Partnership, Western Manor Community Partnership, and Pin Oak Manor Community Partnership. Brademas is the general partner of each of those partnerships. Brademas arranged to have the tax-exempt bonds for the three developments purchased by a lending institution, but the lending institution conditioned the purchases on Brademas's ability to obtain § 42 tax credits for the housing developments by December 31, 1997.

Neither Brademas nor anyone from his office attended IHFA's February 13, 1997 audit of Madison's files. On February 17, 1997, IHFA informed Brademas that it had denied his request for § 42 tax credits for Corby Homes Community Housing Development, Western Manor Housing Development, and Pin Oak Manor Housing Development because of Madison's outstanding noncompliance. IHFA quoted the 1997 QAP: "If in the sole discretion of the Authority, an applicant has materially failed to comply with the procedures and requirements of the Authority . . . the Authority may withhold or reduce . . . Credits for which application is made, irrespective of whether the withheld or reduced Credits relate to the project to which the noncompliance relates."

On March 6, 1997, IHFA honored Brademas's request for a second audit. On March 26, 1997, IHFA sent Brademas a letter outlining the continuing documentation deficiencies. IHFA reiterated that the documentation that Madison had submitted regarding the § 8 eligibility of the tenants of Madison Apartments did not satisfy § 42 documentation requirements. IHFA extended the final cure period and set May 2, 1997 as the date of the audit. IHFA notified

Brademas on June 17, 1997 that, due to Madison's inability to satisfy the requirements of the audit, IHFA had reported Madison's noncompliance to the IRS.

Brademas then sought aid from local politicians. IHFA responded to State Representative Patrick Bauer's inquiries regarding the IRS filing in a letter dated November 30, 1997. Brademas requested an additional file review from IHFA, and IHFA agreed to perform the review, but cautioned that staff turnover would delay the review. Brademas did not receive a final determination from IHFA regarding the requested review.

In January 1998, Brademas secured approval from the Indiana Development Finance Authority for tax-exempt bonds for four other proposed low-income housing developments in Indiana, named West Plains Apartments, Crossroads Apartments, Johnson Street Apartments, and Hillcrest Apartments. Brademas is the managing member of each of the limited liability companies that sought to create the proposed housing developments, called the West Plains Apartments, L.L.C.; Crossroads Apartments, L.L.C.; Johnson Street Apartments, L.L.C.; and Hillcrest Apartments, L.L.C. Although the plaintiffs allege that these four proposed housing developments submitted applications for tax credits to IHFA, neither the record nor the parties' briefs indicate the date that IHFA denied those applications.

On May 24, 1999, the lending institution that had conditionally promised to purchase the tax-exempt bonds for the Brademas entities informed them of its withdrawal of financial participation due to their failure to obtain tax credits from IHFA.

On June 12, 2000, Brademas and the Brademas entities filed a complaint pursuant to 42 U.S.C. § 1983 alleging that IHFA had deprived them of property without due process.

The plaintiffs moved for summary judgment on the issue of liability. The district court ruled in favor of IHFA on the grounds that the claim was barred by the statute of limitations. The district court found that the plaintiffs' claim accrued either on February 17, 1997 when IHFA informed Brademas that it had denied the requested tax credits for the proposed housing developments, or on June 17, 1997, when IHFA notified the IRS of Madison's lack of compliance; in either case, the plaintiffs had failed to file the lawsuit within the applicable two-year statute of limitations. Thus, the district court dismissed the lawsuit and did not reach the merits of the claim. The plaintiffs now appeal the district court's judgment in favor of IHFA.

## II. Discussion

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Salima v. Scherwood South, Inc.*, 38 F.3d 929, 932 (7th Cir. 1994). We review the district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the plaintiffs. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir. 1997).

Claims brought under § 1983 are subject to the statute of limitations for personal injury claims of the state where the alleged injury occurred. *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994). In Indiana, the limitation period is two years. *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 896 (7th Cir. 2001). However, "[f]ederal law determines when a claim accrues. A § 1983 claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hondo*, 21 F.3d at 778.

The Brademas entities allege that IHFA deprived them of a property interest in federal income tax credits without

due process. They advance several arguments that they believe demonstrate that their claim against IHFA accrued not on February 17, 1997, when IHFA denied the credits for the Western Manor, Corby Homes, and Pin Oak Manor developments, or on June 17, 1997, when IHFA notified the IRS of Madison's noncompliance with the documentation requirements of § 42, but on May 24, 1999, when the lending institution withdrew financing for all eight of the proposed developments.

First, they contend that only the withdrawal of bond financing was sufficiently final to trigger the running of the statutory period. Because IHFA retained the authority to review and retract the IRS filing, they argue that the filing could not have put Brademas on notice of the basis of a claim. To demonstrate the ongoing nature of IHFA's inquiry, the plaintiffs refer to the multiple cure periods offered by IHFA, Brademas' efforts to use political pressure to persuade IHFA to change the noncompliance finding, and IHFA's failure to inform Brademas of the finality of either the noncompliance finding or the denial of tax credits. This argument does not speak to the accrual of the claim. A claim accrues on the date that the plaintiff discovers that he or she has been injured. *Cada v. Baxter Healthcare Corp.*, 920 F.3d 446, 450 (7th Cir. 1991). Three of the Brademas entities knew that they had been denied tax credits on February 17, 1997, when IHFA first communicated the denial to them. And, when IHFA notified the IRS of Madison's noncompliance on June 17, 1997, Brademas knew that Madison had exhausted all of the promised cure periods. Further, Brademas knew that the QAP empowered IHFA to deny all of his future applications for tax credits because of his involvement with the noncompliant Madison Apartments. Brademas was fully aware of all of IHFA's allegedly wrongful decisions in June 1997, and despite IHFA's willingness to reconsider those decisions, they remained in force. Therefore, the Brademas entities' claim accrued no later than June 1997.

Next, the Brademas entities contend that a cause of action cannot accrue until the plaintiff experiences the damages that flow from the alleged injury. In this case, they argue, the damages were not fully ascertainable until May 1999, when the lender withdrew the bond financing as a result of Brademas's inability to obtain tax credits from IHFA for the planned developments. The plaintiffs cite *Burks v. Rushmore*, 534 N.E.2d 1101, 1103 (Ind. 1989) for the proposition that "the statute of limitations begins to run . . . upon the uniting of at least two elements— injury and damages." As *Burks* applied Indiana law, it is not applicable to this case. The accrual of a cause of action under § 1983 is a question of federal law, not state law. *Hondo*, 21 F.3d at 778. But even if this argument were characterized as an invocation of the federal common law "discovery rule," which states that "[a]ccrual is . . . not the date on which the wrong that injures the plaintiff occurs, but the date . . . on which the plaintiff discovers that he has been injured," *Cada v. Baxter Healthcare Corp.*, 920 F.3d 446, 450 (7th Cir. 1991), the argument would not prevail.

The plaintiffs argue that they did not realize the extent of their injury until the planned housing developments were to be put in service; it is not until that time that they lost what they call "the benefits of the tax credits." But the discovery rule does not suspend the accrual of a claim until the plaintiff experiences the entirety of consequences resulting from an injury, but only until the plaintiff has knowledge of an allegedly unlawful action. In *Cada*, this Court held that a claim accrued when an employer informed an employee that his employment was terminated effective in two weeks—and not when the employee confirmed the decision with a supervisor, or on the employee's last day of employment—because the employee understood that he had been fired during the initial termination discussion. *Cada*, 920 F.3d at 449-450. Similarly, when IHFA communicated

its denial of Western Manor's, Corby Homes', and Pin Oak Manor's applications for tax credits in February 1997, they were informed of the injury upon which this lawsuit is premised. It is immaterial that the lender did not withdraw the bond financing until two years later. The federal common law discovery rule does not permit the plaintiff to delay filing its lawsuit until all foreseeable harms arising from the injury are actually experienced, but only until the plaintiff discovers the predicate injury. In this case, that injury was IHFA's February 1997 denial of tax credits to the Corby Homes, Western Manor, and Pin Oak Manor proposed housing developments and IHFA's June 1997 report of Madison's noncompliance report to the IRS.

In the alternative, Brademas argues this Court should equitably toll the limitations period or equitably estop IHFA from asserting the statute of limitations defense. Equitable tolling applies when a plaintiff, despite due diligence, is unable to obtain enough information to conclude that there is a basis for a claim. *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir. 2001). Again, the Brademas entities argue that they were unable to ascertain an injury arising from IHFA's denial of tax credits until their lender withdrew bond financing. We disagree. Three of the Brademas entities were in possession of all of the information necessary to bring suit against IHFA as soon as they received IHFA's letter denying them tax credits. Further, Brademas knew in June 1997 that, under the terms of the QAP, any of his future applications for tax credits would likely be denied because of his involvement with Madison. When "the necessary information is gathered after the claim arose but before the statute of limitations has run, the presumption should be that the plaintiff could bring suit within the statutory period and should have done so." *Cada*, 920 F.2d at 453.

Nor are the Brademas entities entitled to equitable estoppel. Equitable estoppel "is available if the defendant

takes active steps to prevent the plaintiff from suing on time." *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) (internal quotations omitted). The plaintiffs argue that IHFA's promise to review the finding of Madison's noncompliance prevented Brademas from filing suit. But the plaintiffs have not argued that IHFA gave any indication that the review would necessarily result in a retraction of the noncompliance finding filed with the IRS, nor have they alleged that IHFA asked them to delay filing a lawsuit during the pendency of the review. IHFA's decision to review the allegedly unlawful action, without more, is insufficient to estop IHFA from asserting a statute of limitations defense. *See id.*

### III.  Conclusion

For the reasons discussed herein, we AFFIRM the judgment of the district court.


A true Copy:

       Teste:


                 _____
                 *Clerk of the United States Court of*
                 *Appeals for the Seventh Circuit*