NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued July 11, 2012
Decided August 23, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 11-3630

| | |
|---|---|
| GLORIA E. TEAGUE, | Appeal from the United States District |
|     *Plaintiff-Appellee*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 10 C 05972 |
| NORTHWESTERN MEMORIAL | |
| HOSPITAL, | Elaine E. Bucklo, |
|     *Defendant-Appellant.* | *Judge*. |

**O R D E R**

Gloria Teague, once a housekeeping assistant at Northwestern Hospital, claims that her former employer failed to accommodate her asthma in violation of the Americans with Disabilities Act, *see* 42 U.S.C. § 12112(b)(5)(A). She asserts that the hospital did not engage in an interactive process to identify an accommodation for her disability. The district court granted summary judgment for the hospital, reasoning that Teague's claim is time-barred because at no point within the statute of limitations was she a "qualified individual with a disability." We affirm the judgment of the district court.

Teague began work at Northwestern Hospital in 1999 as a housekeeping assistant. She cleaned patients' rooms and isolation rooms, mopped, swept, removed trash, and dusted. Her job required her to use Windex, bleach, wax, toilet bowl cleaner, and

disinfectants. All of the cleaning supplies bothered her asthma, as did the dust. When deposed during this lawsuit, Teague admitted that she could not do her job as a housekeeping assistant without coming in contact every day with dust and cleaning supplies.

Beginning in 2008, Teague sought changes to her working conditions based on her worsening asthma. On March 8, 2008, her doctor requested in writing that she stay on "light duty" for three weeks; the doctor's letter does not define "light duty," but Teague admits that Northwestern restricted her to light-duty work as requested. On light duty Teague still dusted and cleaned, but she did not do heavy lifting. On March 24 her doctor further restricted Teague's working conditions by instructing that she lift no more than ten pounds and avoid chemicals, perfumes, scented products, and dusty environments for two weeks. Teague says that during this period she still was on light duty but was unable to avoid exposure to chemicals, perfumes, and scented products; she could not remember whether her asthma made it difficult to work during that time, or whether she took any leave. Her doctor recommended on April 7, 2008, that Teague wear a mask in dusty environments and continue on light duty, which the physician described as excluding mopping, heavy lifting, and pushing carts.

Teague says that she informed her supervisors about this latest round of restrictions, but still she was pushing a cart and lifting heavy trash. She admitted at her deposition that performing the job of housekeeping assistant would be impossible without a cart. Teague again could not remember whether she took any leave as a result of the restrictions. On May 12, Teague's doctor extended the limitations on contact with dust and perfumes and added that Teague should not be exposed to extreme temperatures. On June 2, Teague's doctor allowed her "to go back to work" but limited her to "routine" cleaning, dusting, and exposure to typical cleaning products like Windex and spray wax. He cautioned her to stay away from "strong chemicals" and "excessively dusty" environments. Teague says that from June 2008 to May 2009 she performed her job as a housekeeping assistant under those parameters. When pressed at her deposition, Teague said she had asked to be removed from the department, but could not remember when she made that request. She never applied for jobs outside of her department.

Teague took a medical leave of absence in May 2009 after a severe asthma attack. When she later applied for Social Security disability benefits, she listed an onset date of May 2009. Her new doctor informed Teague and Northwestern in July that Teague would be able to return to work within six months, targeting November 2009. But Teague's condition regressed after showing some improvement, and in May 2010 her doctor concluded that Teague's asthma was "triggered by" her work environment and decided that she had "no ability to work" in her former position as a housekeeper but could perform a sedentary job

in the future. Teague says that her doctor notified Teague and Northwestern on June 21, 2010, that Teague could not return to work in any capacity. Northwestern disputes the characterization of the doctor's communication. The doctor's form sent to Northwestern and Teague's insurance company, dated June 21, 2010, states that Teague was unable to perform any job at that time.

During her extended leave Teague received long-term disability benefits through her insurance at Northwestern. In a letter dated June 21, 2010, Northwestern inquired about Teague's ability to work and notified her that she had exhausted her insurance benefits and would be terminated if she did not return to work. The letter also stated, "If you are unable to return at full capacity, but you believe you have a disability that would qualify for a reasonable accommodation, you must also contact me immediately so that we can proceed as appropriate." Teague sent a response, reiterating that she remained unable to work, but the letter was returned to her undelivered. Northwestern fired Teague on July 12, 2010.[1] At the time of her deposition in May 2011, Teague had just started receiving disability benefits from Social Security.

Teague filed a charge of discrimination with the Illinois Department of Human Rights and (simultaneously) with the Equal Employment Opportunity Commission on June 18, 2010. She alleged that she had "requested a reasonable accommodation, and one was not provided." After receiving a right-to-sue letter, Teague filed this federal lawsuit in September 2010, claiming that Northwestern had failed to accommodate her disability in violation of the ADA. Teague alleged that her asthma became increasingly severe until she was fired. She asked the district court to award back pay, front pay, damages for allegedly aggravating her asthma and causing permanent physical injury, and costs.

After seven months of discovery Northwestern moved for summary judgment. The hospital argued that Teague had been unable to work in any capacity since starting her leave of absence in May 2009 and thus was not a "qualified individual with a disability" under the ADA. Additionally, Northwestern argued, Teague's allegations about the period before her leave of absence were irrelevant because her EEOC charge could encompass only events occurring in the previous 300 days (i.e., before August 2, 2009). Along with its motion, Northwestern submitted excerpts from Teague's deposition, her correspondence with Northwestern, letters from Teague's doctors, the deposition of one of Teague's doctors, and a declaration from a human-resources employee at Northwestern.

---

[1] The termination letter stated, "You have failed to respond to the letter from Human Resources dated Jun 21, 2010 advising us of your status. Thus your employment at Northwestern Memorial Hospital is terminated effective immediately."

In response Teague abandoned her earlier theory that Northwestern's act of terminating her employment had been discriminatory; she did not dispute that she no longer was a "qualified individual with a disability" after her doctor told the hospital in June 2010 that she could not return to work in any capacity. Teague argued, however, that her ADA claim was not time-barred because, she insisted, the hospital had failed on a continuing basis to engage in an interactive process to determine whether an appropriate accommodation could be made. She argued that Northwestern's failure to accommodate her began in March 2008 and continued until her termination in July 2010. Teague did not dispute the hospital's assertion that, *in fact*, she had been unable to perform any job since the start of her leave of absence, but she maintained that she nonetheless was a "qualified individual with a disability" during the time she was on leave because her doctor had not yet *said* she could never return to work.

The district court agreed with Northwestern that Teague's claim was time-barred. The court reasoned that Teague's only theory is that Northwestern had failed to engage in an interactive process with her to determine whether an appropriate accommodation could be made. The court could consider only events that occurred within 300 days of the alleged discrimination. And during that 300-day period (going back to August 2, 2009) Northwestern had not been obligated to engage in an interactive process with Teague because she no longer was a "qualified individual with a disability" after she became unable to work in any capacity in May 2009. Thus, the court reasoned, the continuing-violation doctrine could not save Teague's claim because Teague had failed to prove or even allege a timely violation of the ADA.

On appeal Teague asserts that Northwestern did nothing to accommodate her asthma while she worked at the hospital, though her own deposition belies this statement. As she did in the district court, Teague maintains that she was a "qualified individual with a disability" under the ADA both before and after the start of her leave of absence on May 2, 2009. In her brief Teague concedes that "in retrospect, the exacerbation [of her asthma] suffered May 2, 2009 rendered her incapable to return to work." But that doesn't matter, she insists, because she and her doctor expected her to return to work. Moreover, Teague contends, the hospital is estopped from arguing about the timeliness of her EEOC charge because, she says, Northwestern deliberately led her to believe that it would accommodate her return to work.

To establish a violation of the ADA, an employee must show that (1) she is disabled; (2) she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation. *Winsley v. Cook*

*Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009); *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000).

The district court properly refused to consider the alleged discrimination that occurred more than 300 days before Teague's EEOC filing. A plaintiff in Illinois, a "deferral state" because it has a state agency with enforcement powers parallel to those of the EEOC, must file a charge of discrimination with the EEOC within 300 days of some offending conduct. 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); 29 C.F.R. § 1601.80; *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001). The parties agree that Teague's statutory period began on August 2, 2009. So her allegations that Northwestern failed to accommodate her disability in 2008 and 2009, before she went on medical leave in May 2009, cannot be used to support her claim.

The continuing-violation doctrine has no relevance to this case. That doctrine concerns a claim based on an ongoing policy rather than discrete acts of discrimination. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–18 (2002); *Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684–85 (7th Cir. 2010). Teague cites no authority discussing the continuing-violation doctrine in the context of a failure to accommodate. Yet courts *have* analyzed the application of this doctrine in ADA lawsuits. And these decisions directly undermine Teague's argument by concluding that a refusal to accommodate is a discrete act—not an ongoing omission—and therefore the continuing violation doctrine does not apply. *See Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130–31 (1st Cir. 2009); *Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 368 (D.C. Cir. 2007); *see also Proctor v. United Parcel Service*, 502 F.3d 1200, 1210 (10th Cir. 2007) (explaining that employer's denial of requested accommodation "constitutes a discrete act of alleged discrimination).

So Teague's claim was untimely, but in the end that may not matter because it is not clear that she even was a qualified individual with a disability when she was making requests for accommodation in 2008. The district court reasoned that Teague no longer could be a "qualified individual with a disability" after she went on a medical leave of absence in May 2009, and we agree. Even before that date, however, her status is questionable. From March 2008 until she began her leave of absence, Teague was often under work restrictions that at times kept her away from dust and chemicals, or prevented her from mopping floors and lifting significant weight, or kept her from pushing her housekeeping cart. The term "qualified individual" means a person who, with or without reasonable accommodation, can perform the essential functions of the employment position that she holds or desires. 42 U.S.C. § 12111(8); *Kotwica v. Rose Packing Co., Inc.*, 637 F.3d 744, 748 (7th Cir. 2011); *Budde v. Kane Cnty. Forest Preserve*, 597 F.3d 860, 862 (7th Cir. 2010). Teague herself admitted that she couldn't have performed the job of housekeeping assistant under some of these restrictions, and thus she concedes that at times she was not qualified

to perform the essential functions of the job. *See Alexander v. Northland Inn*, 321 F.3d 723, 726–27 (8th Cir. 2003) (concluding that plaintiff who could not vacuum could not perform essential functions of her job as housekeeping supervisor); *see also Dyke v. O'Neal Steel, Inc.*, 327 F.3d 628, 633–34 (7th Cir. 2003) (one-eyed plaintiff did not prove he could pass vision test and therefore could not perform essential functions of working in warehouse); *Dvorak v. Mostardi Platt Assocs., Inc.*, 289 F.3d 479, 481, 484–85 (7th Cir. 2002) (plaintiff conceded arthritis prevented him from fieldwork and mobility required for his job as service manager).

Even if Teague could demonstrate that she was a qualified individual with a disability, she still has not shown that Northwestern was liable for failing to engage in an interactive process to accommodate her disability. The federal regulations implementing the ADA contemplate an interactive process between employer and employee in order to determine the appropriate accommodation for a qualified individual with a disability. 29 C.F.R. § 1630.2(*o*)(3). After the employee has communicated his disability and asked for an accommodation so that she can continue working, "the employer has the burden of exploring with the worker the possibility of a reasonable accommodation." *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000); *see Dargis v. Sheahan*, 526 F.3d 981, 988 (7th Cir. 2008). But to ultimately prevail on an ADA claim, it remains "the plaintiff's burden to show that a vacant position exists for which [s]he was qualified." *Jackson v. City of Chicago*, 414 F.3d 806, 813 (7th Cir. 2005); *see Mays v. Principi*, 301 F.3d 866, 870–71 (7th Cir. 2002). Teague apparently assumes that the duty to reasonably accommodate a disability means funding—or even creating—a different job for her; not only is that assumption wrong as a matter of law, *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002), but Teague did not even suggest that she was qualified to do a different job at the hospital despite her asthma.

AFFIRMED.