**Edward and Pamela REISER, and Janet Greenlee, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**RESIDENTIAL FUNDING CORPORATION a/k/a GMAC–RFC, Defendant.**

**No. –3 CV 0619 DRH.**

United States District Court, S.D. Illinois.

May 25, 2004.

Eric G. Calhoun, Lawson, Fields et al., Richard J. Pradarits, Jr., Attorney at Law, Addison, TX, for Plaintiffs.

Nina M. Faber, Roy W. Arnold, Thomas L. Allen, Reed Smith, Pittsburg, PA, Peter J. Kennedy, Reed Smith, Los Angeles, CA, Richard K. Hunsaker, Robert H. Shultz, Jr., James A. Telthorst, Heyl, Royster et al., Edwardsville, IL, for Defendant.

## MEMORANDUM AND ORDER

HERNDON, District Judge.

### I. Introduction and Background

Now before the Court is Defendant Residential Funding Corporation's motion to dismiss (Doc. 26). Based on the following, the Court denies the motion.

On February 13, 2004, Plaintiffs, individually and on behalf of all others similarly situated, filed a First Amended Complaint against Residential Funding Corporation a/k/a GMAC–RFC ("RFC") for violations of the Illinois Interest Act, 815 ILCS 205/4.1, violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), as amended by the Home Ownership Equity Protection Act, 15 U.S.C. § § 1635, 1639, & 1640 ("HOEPA") violations of the Real Estate Settlement Protection Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), Conspiracy, Common Law Fraud and violations of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Doc. 23).[1] Plain-

---

1. Plaintiffs purport to represent two different classes of individuals: (A) The Illinois Class: all residents of the state of Illinois, (1) who were sold second mortgage loans by Mortgage Capital, which were secured by residential real estate in the State of Illinois and had an interest rate in excess of 8% per annum and origination fees charged that exceed 3% of the principal amount of the loan calculated pursuant to the Illinois Interest Act; (2) whose loans were subsequently transferred or assigned to GMAC–RFC; and (3)(i) whose last

tiffs allege the second mortgage loans they obtained from Mortgage Capital Resource Corporation ("Mortgage Capital") included illegal and deceptive charges and that RFC, which took assignment of the second mortgage notes, is liable for Mortgage Capital's violations of Illinois law and federal law.

Plaintiffs Edward and Pamela Reiser, a married couple, and Janet Greenlee reside in Illinois (Doc. 23, ¶¶ 12–13). The Reisers and Greenlee obtained second mortgages from Mortgage Capital (Doc. 23, ¶¶ 60 & 63). The Reisers' second mortgage was for $34,000 and had an interest rate of 13.125% while Greenlee's second mortgage was for was for $35,000 and had an interest rate of 17.25% (Doc. 23, ¶¶ 61 & 63). Both mortgages charged various items as "fees", including origination fees, loan discount fees, processing fees, underwriting fees and document preparation fees, coupled with non bona fide closing costs (Doc. 23, ¶¶ 61 & 63). Plaintiffs describe these loans as "High Loan to Value" loans ("HLTV loans") because they are secured by a second mortgage on residential property where the total outstanding debt on the dwelling often exceeds the fair market value of the property (Doc. 23, ¶ 29).

Each note and mortgage secured by Plaintiffs included provisions that the rights and duties of Mortgage Capital were assignable and that the laws of the state of where the property was located would govern the mortgages (Doc. 23, ¶¶ 33 & 34). Plaintiffs maintain that Mortgage Capital did not maintain its own loan portfolio; rather the loans were pooled and sold to investors either through bulk loan sales or by securitizing the loans into pools of mortgaged-backed securities (Doc. 23, ¶ 35). Plaintiffs contend that Mortgage Capital used Johnson & Payne, PLC (Mortgage Capital's purported settlement agent) as a tool to funnel fraudulent settlement charges to Mortgage Capital and its officers (Doc. 23, ¶ 69). Plaintiffs further allege that Mortgage Capital, Johnson & Payne, and Kenneth Ketner, CEO of Mortgage Capital, conspired with each other to mislead borrowers and others concerning the kickback arrangement with Johnson & Payne, inflated finder fees and closing charges, and that they deliberately prepared misleading and inaccurate HUD–1 settlement statements (Doc. 23, ¶ 70). Plaintiffs allege that RFC is liable by way of the Home Ownership and Equity Protection Act, 15 U.S.C. § 1641(d).[2]

scheduled payment of the loan, after giving effect to any renewals or extensions, was due later than two years prior to the filing of this Complaint; or (ii) if the total amount due under the terms of the loan contract was fully paid, it was paid later than two years prior to the filing of this Complaint; and (B) The National Class: all borrowers that were sold second mortgage loans from Mortgage Capital secured by real property anywhere in the United States, where the loan meets the definition of a high-cost mortgage set forth at 15 U.S.C. § § 1602(aa), and were subsequently transferred or assigned to GMAC–RFC. The National Class makes claims in part pursuant to RESPA and TILA, as amended by HOEPA. Specifically excluded from the National Class are borrowers with loans secured by real property in the State of Missouri. As of this date, the classes have not been certified, thus the case is not proceeding as such.

**2.** Section 15 U.S.C. § 1641(d)(1) states: "Any person who purchases or is otherwise assigned a mortgage referred to in Section 1602(aa) of this title shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage that the consumer could assert against creditor of the mortgage, unless the purchaser or assignee demonstrates ... that a reasonable person exercising ordinary due diligence could not determine, based on the documentation required by this subchapter ... that the mortgage was a Section 1602(aa) high cost mortgage."

With regard to the Named Plaintiffs, the amended complaint alleges that on October 30, 1999, the Reisers obtained a twenty-five year second mortgage home equity loan from Mortgage Capital in the principal amount of $34,000.00 and that on November 4, 2024 (the last scheduled payment date), the Reisers will have paid a total of $116,001.00 on the loan including $85,571.00 in interest. The amended complaint further alleges that Greenlee also obtained a twenty-five year second mortgage home equity loan from Mortgage Capital in the principal amount of $35,000.00 and that on November 24, 2004 (the last scheduled payment date), Greenlee will have paid $153,051.00 on the loan and including $121,971.00 in interest.

RFC moves to dismiss the First Amended Complaint, arguing that it fails to state any claim upon which relief can be granted. Specifically, RFC argues that the section of the Illinois Interest Act upon which Plaintiffs sue has been impliedly repealed; that Plaintiffs' TILA, RESPA and Consumer Fraud claims are barred by the applicable statute of limitations and/or repose; that Plaintiffs have failed to adequately plead fraudulent concealment and/or equitable tolling; and that the conspiracy and common-law fraud claims are barred for failure to adequately plead the requisite factual elements. Plaintiffs oppose the motion. The Court rules as follows.

## II. *Motion to Dismiss Standard*

When reviewing a motion to dismiss under Rule 12(b)(6), the Court merely looks at the sufficiency of the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Autry v. Northwest Prem. Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir.1998); it does not decide whether the plaintiff has a winning claim. *Herdrich v. Pegram, M.D.*, 154 F.3d 362, 369 (7th Cir.1998); *see also McCormick v. City of Chicago*, 230 F.3d 319, 323–26 (7th Cir.2000) (analyzing *Leatherman v. Tarrant County*, 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) and reversing the Rule 12(b)(6) dismissal of claims based on §§ 1981 & 1983); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998) ("Complaints need not plead law or match facts to every element of a legal theory . . . ."). Thus, "[a] complaint should not be dismissed for failure to a state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." *Smith v. Cash Store Mgmt., Inc.*, 195 F.3d 325, 327 (7th Cir.1999) (citations and internal quotation marks omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims ... Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." *Id.* "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992, 152 L.Ed.2d 1. All well-pleaded facts are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. *See e.g. Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977–78 (7th Cir.1999).

As a general rule, the Court must consider only the allegations made on the face of the complaint when ruling on a motion to dismiss. *See* FED.R.CIV.P. 12(b)(6). This includes documents the plaintiff has attached to the complaint. *See* FED.R.CIV.P. 10(c). If matters outside the pleadings are placed before the district court, the court must convert the defendant's 12(b)(6) motion into a motion for summary judgment under FED. R.CIV.P. 56. *See Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d

569 (1972); *see also Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993). As an exception to the general rule, the Seventh Circuit has held that documents attached to a motion to dismiss are considered to be part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *See id.* at 431–32; *see also Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir.1994). Although the plaintiff is under no obligation to attach documents relating to her claim, a defendant may introduce certain documents if the plaintiff has failed to do so. *Venture Assocs. Corp.*, 987 F.2d at 431. "Such documents may be considered by a district court in ruling on the motion to dismiss." *Wright*, 29 F.3d at 1248.

### III. *Analysis*

#### A. *Illinois Interest Act*

■ First, RFC argues that the Court should dismiss Plaintiffs' claims that are based on § 4.1a(f) of the Illinois Interest Act because that section has been impliedly repealed. The Court rejects this argument. Earlier this year, this undersigned district judge addressed this exact issue in *Landmann v. Bann–Cor*, 2001–CV–0417–DRH, 2004 WL 1944789 (S.D. Ill. Feb. 26, 2004). This Court found that section 4.1a(f) of the Illinois Interest Act had not been repealed. Specifically, this Court held:

> The Court agrees with Judge Coar's conclusion that although ... the reasoning of *Currie* is persuasive ... the Illinois Supreme Court would most likely adopt the results in the *Hicks* decision based upon the legislature's 1991 amendments to sections 4 and 4.1a and the principle that repeal by implication is strongly disfavored. Thus, the Court

finds that the Named Plaintiffs may pursue their § 4.1a(f) claim against the remaining Defendants.

*Id.* at p. 15 (quoting *Jackson v. Resolution GGF OY*, 1995 WL 562120, *6 (N.D.Ill. Sept. 20, 1995)). Moreover, on March 31, 2004, the Illinois Court of Appeals for the First District (the same Court that decided *Fidelity Financial Services, Inc. v. Hicks*, 214 Ill.App.3d 398, 158 Ill.Dec. 221, 574 N.E.2d 15 (1991)) considered the issue of whether the federal Depository Institutions Deregulation and Monetary Control Act of 1980 ("DIDMCA"), 12 U.S.C. § 1735 *et seq.* preempted § 4.1a of the Illinois Interest Act. *U.S. Bank National Association v. Clark*, 348 Ill.App.3d 856, 283 Ill.Dec. 268, 807 N.E.2d 1109 (2004). The Illinois Appellate Court found that the DIDMCA and did not preempt § 4.1a. *Id.* at *5. Implicit in that decision is the recognition—and reaffirmation—that § 4.1a of the Illinois Interest Act is still viable despite the Seventh Circuit's holding in *Currie v. Diamond Mortgage Corp. of Illinois*, 859 F.2d 1538, 1542 (7th Cir.1988). Thus, the Court finds that Plaintiffs may bring a cause of action against RFC for violations of the Illinois Interest Act. Therefore, the Court denies RFC's motion to dismiss regarding violations of the Illinois Interest Act claims.

#### B. *Statute of Limitations Argument*

■ Next, RFC argues that TILA and RESPA's one year statute of limitations and the ICFA's three year statute of limitations bars Plaintiffs' claims.[3] Further, RFC argues that Plaintiffs have not plead facts sufficient to establish equitable tolling or fraudulent concealment against RFC. Plaintiffs complain of events that took place in 1999 but they did not file their complaint until 2003. Thus, at first

---

3. Both TILA and RESPA each have a one year statute of limitations period. 15 U.S.C. § 1640e; 12 U.S.C. § 2614. The ICFA has a three year statute of limitations. 815 ILCS 505/10a(e).

glance their complaint appears to be 3 years and 1 year, respectively, untimely. Plaintiffs, however, Plaintiffs argues that the statute of limitations should be tolled for their claims on both grounds of fraudulent concealment and equitable tolling.

Here, the Court finds that TILA and RESPA are subject to equitable tolling. *See Lawyers Title Ins. Corp. v. Dearborn Title Corp.*, 118 F.3d 1157 (7th Cir.1997). Thus, the Court must decide whether Plaintiffs' claims should be tolled.

■ There are two doctrines that can be invoked by plaintiffs to toll the running of the period of limitations: 1) equitable tolling, and 2) fraudulent concealment, also known as equitable estoppel. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (1990). The doctrine of equitable tolling allows a plaintiff to toll the statute of limitations if "despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 450. The Seventh Circuit describes the doctrine in *Cada* stating that under the doctrine a "plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing." Thus the court limits the doctrine to where the plaintiff knows that he was injured during the limitations period, but does not know he had a claim against the defendant. Although other Seventh Circuit cases do not specifically include that the plaintiff must know of the injury within the limitations period, neither do the other opinions contradict such a distinction. *See Mitchell v. Donchin*, 286 F.3d 447, 451 (7th Cir.2002) (stating that the doctrine "turns on whether a reasonable person would be aware of the possibility of a claim") (quoting *Hentosh*, 167 F.3d at 1175); *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix*, 283 F.3d 877, 884 (7th Cir.2002) (stat-

ing that doctrine applies where plaintiff cannot "obtain information that he needs in order to be able to sue within the statutory period."); *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 373 (7th Cir.2001) (stating that doctrine applies when plaintiff "is unable to obtain enough information to conclude that he may have a discrimination claim."); *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir.2001) (stating that the doctrine applies "if it would have been unreasonable to expect [the plaintiff] to be able to sue earlier."); *Hentosh*, 167 F.3d at 1174 (stating that doctrine "often focuses on the plaintiff's excusable ignorance of the limitations period and on the lack of prejudice to defendant") (quoting *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991)); *Chapple v. National Starch and Chemical Co. and Oil*, 178 F.3d 501, 506 (7th Cir.1999) (stating that equitable tolling doctrine applies when the plaintiff was not aware within the limitations period "of the possibility that [his] rights [had been] violated").

■ To successfully invoke the doctrine of fraudulent concealment and toll a statute of limitations a plaintiff must establish that the defendant took "active steps to prevent the plaintiff from suing in time . . . ." *Cada*, 920 F.2d at 450–51. The "active steps" must be "above and beyond the wrongdoing upon which the plaintiff's claim is founded . . . ." *Mitchell v. Donchin*, 286 F.3d 447, 450 (7th Cir.2002); *see also Jackson v. Rockford Housing Authority*, 213 F.3d 389, 394 (7th Cir.2000) (stating that equitable estoppel only applies when "defendant, in addition to committing the alleged wrong giving rise to the suit, has also tried to prevent the plaintiff from suing in time."). Two common examples of such fraudulent concealment would be concealing evidence or promising not to invoke a statute of limitations defense. *Id.*

To the extent that concealment is part of the original fraud, the concealing acts merely "postpone the date of accrual by preventing the plaintiff from discovering that he is a victim of fraud." *Cada,* 920 F.2d at 450–51.

As to equitable tolling, Plaintiffs argue that the kickbacks are tricks are contrivances intended to exclude suspicion. Plaintiffs contend that the kickbacks are misleading, deceptive, otherwise contrived actions or schemes which are inherently self concealing acts. As to the fraudulent concealment, Plaintiffs assert that a sham entity that was created and operated to funnel secret kickbacks to Defendant support the theory of active fraud. Here, Plaintiffs' First Amended complaint alleges that MRC made numerous misrepresentations and concealed material facts, *inter alia* . . . :

a. Mortgage Capital misrepresented that Johnson & Payne was serving as settlement agent in connection with Plaintiffs' loans;

b. Mortgage Capital misrepresented to Plaintiffs that it was paying $450.00 to Johnson & Payne for services as settlement agent;

c. Mortgage Capital concealed from Plaintiffs the fact that Mortgage Capital was controlling the disbursement of funds to alleged third parties referred to on the HUD–1 statements provided to Plaintiffs in connection with their loans;

d. Mortgage Capital concealed the fact that the alleged settlement agent, Johnson & Payne, shared offices with Mortgage Capital and that Mortgage Capital controlled Johnson & Payne's trust account;

e. Mortgage Capital concealed from Plaintiffs the fact that there was no independent settlement agent ensuring that third party charges represented on the HUD–1 financial closing statements were bona-fide third party charges paid to third parties at closing;

(Doc. 23, ¶ 67). Furthermore, Plaintiffs allege that they "had no reason to suspect that the above information was concealed from them in connection with their loans, Certainly, Plaintiffs had no reason to suspect that Johnson & Payne was a tool that Mortgage Capital used to funnel fraudulent settlement charges to Mortgage Capital and its officers. Plaintiffs exercised the normal diligence that could be expected of a consumer borrower. Plaintiffs reviewed their loan documents and reasonably relied upon the accuracy of the statements contained therein. They has no basis to know that the thousands of dollars in various fees they were paying were fictitious charges that went into Mortgage Capital and its co-conspirators [sic] pockets." (Doc. 23, ¶ 68). Based on the pleadings, the Court finds that Plaintiffs have pled equitable tolling and fraudulent concealment with the required specificity. Thus, the issue of equitable tolling of the statute of limitations as to the TILA, RESPA and ICFA claims is one fact that survives the motion to dismiss.

### C. *Common Law Fraud*

In order to state a cause of action for common law fraud, the essential elements of fraud must be pleaded with specificity. Under Illinois law, there are six elements of common law fraud. Ultimately, a plaintiff must show that (1) defendant made a false statement of material fact, (2) defendant knew or believed the statement was false, (3) plaintiff had a right to rely upon the statement, (4) plaintiff did rely on the statement, (5) defendant made the statement for the purpose of inducing plaintiff to act, and (6) plaintiff's reliance led to plaintiff's injury. *Cramer v. Insur-*

*ance Exchange Agency,* 174 Ill.2d 513, 221 Ill.Dec. 473, 675 N.E.2d 897, 905 (1996).

█ Here, the Court finds that Plaintiffs stated a claim for common law fraud. Plaintiffs allege that MCR made misrepresentations and omissions of material facts intended to induce them to enter into loan transactions with MCR, that they relied on those misrepresentations and omissions and that as a result they were injured. Specifically, Plaintiffs allege that the false representations included "the statement that Johnson & Payne was being paid $450 for providing settlement services in connection with the loans. Mortgage Capital also misrepresented the cost of the charges in the HUD–1 disclosure statements. Mortgage Capital also misrepresented the various services, such as credit reports, were obtained when the [sic] were not." (Doc. 23, ¶ 112). Thus, the Court denies RFC's motion to dismiss the common law fraud claim.

### D. *Illinois Consumer Fraud Act*

█ In order to show a violation of the ICFA, a plaintiff must show "(1) a deceptive act or practice, (2) intent on the defendants' part that plaintiff rely on the deception, and (3) the deception occurred in the course of conduct involving trade or commerce." *Siegel v. Levy Org. Dev. Co.,* 153 Ill.2d 534, 180 Ill.Dec. 300, 607 N.E.2d 194, 198 (1992).

█ Here, the Court finds that Plaintiffs have stated a cause of action under the ICFA. Plaintiffs allege "closing costs charged by Mortgage Capital did not bear a reasonable relationship to costs incurred by Mortgage Capital for providing these services and/or did not represent bona fide charges by third party service providers. Mortgage Capital failed to disclose the overcharges to Plaintiffs." (Doc. 23, ¶ 116). Plaintiffs further allege that "the unfair and deceptive acts and practices by Mortgage Capital were made with the in-

tent that Plaintiffs rely on such representations. Plaintiffs so relied." (Doc. 23, ¶ 117). Therefore, the Court denies RFC's motion to dismiss the ICFA claims based on lack of particularity.

### E. *Civil Conspiracy*

█ The Court determines that Plaintiffs have stated sufficient facts to support their Illinois civil conspiracy claim. First, a plaintiff's claim based on Illinois civil conspiracy must include facts tending to show an agreement among the defendants to commit a tortious or unlawful act. *McClure v. Owens Corning Fiberglas Corp.,* 188 Ill.2d 102, 133, 241 Ill.Dec. 787, 720 N.E.2d 242 (1999). In this case, Plaintiffs have alleged that there was an agreement among the lender, its CEO and their law firm to defraud borrowers. Second, an Illinois civil conspiracy is not an independent tort, and failure to plead properly an independent cause of action on which the conspiracy is allegedly based requires dismissal of the conspiracy claim. *Indeck N. Amer. Power Fund v. Norweb,* 316 Ill.App.3d 416, 432, 249 Ill.Dec. 45, 735 N.E.2d 649 (2000)(citing *Adcock v. Brakegate, Ltd.,* 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994)). In this case, Plaintiffs have alleged common law fraud and violations of the Illinois Consumer Fraud Act. Therefore, Plaintiffs have properly pleaded a claim based on Illinois civil conspiracy.

### IV. *Conclusion*

Accordingly, the Court **DENIES** RFC's motion to dismiss (Doc. 26).

**IT IS SO ORDERED.**