# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2576

LAWRENCE STEPNEY,

*Plaintiff-Appellant,*

v.

NAPERVILLE SCHOOL DISTRICT 203,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 5525—**George W. Lindberg**, *Judge.*

———————

ARGUED OCTOBER 27, 2004—DECIDED DECEMBER 2, 2004

———————


Before FLAUM, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges*.

FLAUM, *Chief Judge.* Plaintiff-appellant Lawrence Stepney filed suit against his employer, Naperville School District 203, alleging discrimination based on race and disability. Stepney appeals the district court's grant of summary judgment in favor of the school district. For the reasons stated herein, we affirm the order of the district court.

## I. Background

In 1989, Naperville School District 203 hired Lawrence Stepney, an African-American man, to be a full-time school bus driver. Stepney, like other bus drivers for the school district, became a union member with the Naperville Unit Maintenance Association ("NUMA"). In February 1997, after almost eight years on the job, a work-related injury left Stepney unable to continue driving a bus. Over the next two and one-half years, the school district granted Stepney's repeated requests for leaves of absence.

In the fall of 1999, Stepney wished to return to work with the school district but no longer held a valid license for driving school buses. The school district offered, and Stepney accepted, a position as a behavioral disorder assistant ("BD assistant"), which required him to transfer union membership from NUMA to the Naperville Educational Support Personnel Association ("NESPA"). According to Stepney, he did not realize that he had been transferred between unions until a few months later, in early 2000. Stepney contends that, in accepting the new position, he thought that he would receive "seniority credit" for the purpose of layoff and recall priority, as well as for determining his pay rate. In fact, NESPA transferred his seniority for the former purpose but not the latter; his base pay as a BD assistant was that of a new teacher's assistant and was significantly less than what he had made as a full-time bus driver.

In January 2000, Stepney once again obtained a bus driver's license and immediately began working as a part-time bus driver while continuing to work as a BD assistant. Because there had been a "break in service" due to the lapse in his licensing and different union membership, Stepney began as a probationary bus driver under the NUMA collective bargaining agreement and did not receive seniority credit.

The parties agree that no later than May 10, 2000, Stepney was advised, and understood, that his pay rate had been set pursuant to collective bargaining agreements and that his seniority had not been transferred for salary purposes. Stepney asserts that he then attempted "to resolve these matters internally and informally via discussions with the Union, the school district, and its internal legal counsel," though he never filed a grievance with either union. On January 10, 2002, Stepney filed charges with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC"), claiming that his loss of seniority was a discriminatory act based on race and disability.

Following receipt of his right-to-sue letter, Stepney filed this action. In his complaint, Stepney alleges that the school district violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, by transferring him and causing him to lose his seniority, actions allegedly taken because of his race and disability. On May 13, 2003, the district court granted summary judgment in favor of the school district, finding that Stepney's claims were time-barred because his EEOC charge was not filed within the statutory period. Stepney now appeals the grant of summary judgment.

## II. Discussion

We review de novo a district court's grant of summary judgment based on a statute of limitations. *Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 394 (7th Cir. 2000). We must determine, first, the applicable limitations period, and, second, whether there is any genuine issue of material fact regarding the time at which the plaintiff's action accrued. *See id.*

Stepney's complaint alleges violations of Title VII and the ADA. Title VII makes it an unlawful employment practice for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of the individual's race. 42 U.S.C. § 2000e-2(a)(1). Under Title VII, a plaintiff in Illinois must file an employment discrimination charge with the EEOC within 300 days "after the alleged unlawful employment practice occurred." § 2000e-5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05 (2002); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 662 (7th Cir. 1997). The ADA prohibits a "covered entity" from discriminating against a qualified individual with a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Because the ADA's enforcement provision expressly incorporates § 2000e-5 of Title VII, claims for discrimination under the ADA also must be filed within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1), *incorporated by* 42 U.S.C. § 12117(a).

Stepney filed his EEOC charge on January 10, 2002. Accordingly, his claims are time-barred if they accrued before March 16, 2001, but we must reverse the district court's order if there is a genuine dispute as to whether the claims accrued before that date. To determine the date of accrual, we must identify the unlawful employment practices alleged and the dates on which these practices "occurred."

Stepney alleged in his EEOC charge that the loss of his seniority was a discriminatory employment action based on his race and disability. In the complaint filed in the district court, Stepney alleges that "transferring" him and "removing his seniority" constituted race discrimination, (Compl. ¶ 16), and that "reassigning him, refusing to re-instate him to his

previous position, and permanently demoting him" constituted disability discrimination. (Compl. ¶ 21.) The parties agree that these allegedly unlawful employment practices occurred between August 1999 and May 2000, well before March 16, 2001, the earliest permissible accrual date in this case. Nevertheless, Stepney argues that he can bring these occurrences within the limitations period through the continuing violation doctrine or the notice rule.

Stepney first argues that the school district's failure to remedy the allegedly unlawful actions occurred within the limitations period and that this brings the actions themselves within the limitations period via the continuing violation doctrine. We have made clear, however, that failure to remedy an unlawful employment action is not a discrete actionable violation. *See Lever v. Northwestern Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) ("An employer's refusal to undo a discriminatory decision is not a fresh act of discrimination."), *cited in Williams v. Ind. Univ.*, 345 F.3d 459, 463 (7th Cir. 2003). The continuing violation doctrine does not provide an avenue for circumventing this rule. The doctrine applies to claims like sexual harassment, where an individual act cannot be made the subject of a lawsuit when it occurs because "its character as a violation did not become clear until it was repeated during the limitations period." *Dasgupta v. Univ. of Wis. Bd. of Regents*, 121 F.3d 1138, 1139 (7th Cir. 1997). In those cases, duration and repetition are necessary to convert merely offensive behavior into an actionable change in the plaintiff's working conditions. *Id.* (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) ("For sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.") (internal quotations omitted)). Here, by contrast, the character of Stepney's transfer and loss of seniority was apparent immediately and is not alleged to have changed through duration or repetition. Stepney alleged in his

EEOC charge, and alleges in his complaint, that the transfer and loss of seniority were unlawful in themselves. Accordingly, Stepney's claims are not made timely by the continuing violation doctrine.[1]

Stepney's second argument is that he could not have acted upon the alleged violation "until he was personally convinced that the District would not take remedial action to resolve those illegalities," suggesting that he did not have sufficient information to file an EEOC charge when the violation occurred. Under the notice rule, the 300-day limitations period commences "at the time the [employment decision] was made and communicated to [the employee]." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). The per-

---

[1] Stepney briefly suggests on appeal that the discriminatory acts "could be said to be the receipt of pay based upon improper pay scales," and thus tries to bring his case within the rule stated in *Reese v. Ice Cream Specialties, Inc.*, 347 F.3d 1007 (7th Cir. 2003). In *Reese*, we considered the Supreme Court's analysis of discriminatory pay systems in *Bazemore v. Friday*, 478 U.S. 385 (1986), and later in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). In *Bazemore*, the Supreme Court held that "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII," even though the acts committed when the pattern was first instituted are not actionable. 478 U.S. at 395. Stepney cannot invoke this rule, however, because neither his EEOC charge nor his complaint allege a discriminatory pay or seniority system; both identify discrete acts, his transfer and loss of seniority, as unlawful employment practices. His EEOC charge contains no mention of unequal pay. Accordingly, Stepney has not exhausted any claim based on a discriminatory pay system and, to the extent such a claim is presented here, we may not consider it. *See Dandy v. United Parcel Serv., Inc.*, No. 03-2601, slip op. at 6-7 (7th Cir. Oct. 29, 2004) ("We review solely those charges 'included in [the] EEOC charge . . . or reasonably related to the allegations of the charge and growing out of such allegations.'") (quoting *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 689 (7th Cir. 2001)).

iod begins to run when the employee knows he has been injured, "not when [he] determines that the injury was unlawful." *Sharp v. United Airlines, Inc.*, 236 F.3d 368, 372 (7th Cir. 2001) (quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)). The parties agree that no later than May 10, 2000, Stepney was advised, and understood, that his salary was set by collective bargaining agreements and that his seniority had not been preserved for salary purposes. Stepney has not alleged that any facts relevant to his transfer or loss of seniority were concealed from him, or were otherwise unavailable, after that date. Accordingly, the limitations period began to run no later than May 10, 2000, and accrual was not postponed due to a lack of notice.

Stepney has not demonstrated that he filed a timely EEOC charge or that there is any genuine issue of material fact regarding accrual. Stepney's EEOC charge, filed more than 600 days after the accrual of his claims, was untimely and that untimeliness bars the present action.

### III.  Conclusion

The order of the district court is AFFIRMED.

A true Copy:

       Teste:

                        _____
                        *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*